UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Kforce Inc., <br> Plaintiff, <br> vs. <br> Brady Seesz, <br> Defendant. | Court File No. <br><br> **COMPLAINT** |

## INTRODUCTION

1. Kforce Inc. ("Kforce") brings this suit to enforce Brady Seesz's Restrictive Covenant Agreements, to enjoin Seesz's unlawful and wrongful activities, including the misappropriation of trade secret and confidential information, to recover the compensation that it paid to Seesz during the period of his disloyalty, and to recover other damages for the injuries caused by Defendant's wrongful conduct.

## JURISDICTION AND VENUE

2. Jurisdiction over the causes of action alleged herein is conferred by 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity). This Court has supplemental jurisdiction over the state law causes of action under 28 U.S.C. § 1367.

3. Kforce and Defendant are citizens of different states.

4. Kforce is a Florida corporation with its principle place of business in Florida. Kforce is authorized to do business in the State of Minnesota.

5. Brady Seesz ("Seesz") is a citizen of Minnesota residing in Minnesota.

6. Kforce is seeking (and is entitled to) an award of compensatory, punitive, and other damages against Defendant in an amount in excess of $75,000.00.

7. Pursuant to 28 U.S.C. §1391(a) and 28 U.S.C. § 90(c)(5), venue is proper in this Court.

8. A substantial portion of the events giving rise to this Complaint occurred in Bloomington, Minnesota.

9. The Defendant is subject to the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

10. Kforce is a full-service specialty staffing firm providing flexible and permanent staffing solutions for hiring organizations and career management for job seekers in the specialty skill areas of information technology, finance and accounting, health care and science. Kforce has, through the expenditure of substantial time, effort and money, developed and acquired valuable client and candidate relationships and certain confidential information, valuable confidential compilations and trade secrets which are of great value to Kforce and its operations including, but not limited to, (a) actual or prospective applicant, employment candidate, employee or consultant lists; (b) actual or prospective applicant, employment candidate, employee or consultant qualifications, contact information, and resumes; (c) actual or prospective applicant, employment candidate, employee or consultant compensation and benefits; and (d) other client, applicant, employment candidate, employee or consultant data, compilations or information which is not readily available the public.

11. On September 27, 2010, Kforce hired Defendant as a Recruiter Trainee in Kforce's Bloomington, Minnesota office.

12. Following his training period, Kforce promoted Defendant to a Recruiter position. On June 1, 2011, Defendant's title changed to Talent Representative.

13. In consideration for, among other things, and as a condition of, his employment with Kforce, Defendant executed an Employment, Non-Disclosure and Non-Solicitation Agreement (the "Agreement"). Defendant executed this Agreement, a true and correct copy of which is attached as Exhibit A, on or about September 27, 2010. The Agreement provides in pertinent part as follows:

> **2. Extent of Services.** The EMPLOYEE shall exclusively devote his/her time, attention, energy, loyalty and best efforts to the business of the Firm, and shall not, during the time this Agreement is in effect, engage in any other business activity, whether or not such other business activity is pursued for gain, profit, or other pecuniary advantage, unless such business is fully disclosed to and approved in writing by an authorized representative of the Firm. However, the foregoing restriction shall not be construed as preventing the EMPLOYEE from investing his/her assets in such other form or manner as will not require any services on the part of the EMPLOYEE in the operation of the affairs of the companies in which such investments are made.
>
> . . .
>
> **6. Confidential Information.** The EMPLOYEE recognizes and acknowledges that the FIRM has, through the expenditure of substantial time, effort and money, developed, compiled and/or acquired certain confidential information and trade secrets which are of great value to the FIRM in its operations. The EMPLOYEE further acknowledges and understands that in the course of performing his/her duties for the FIRM, he/she will receive and/or have access to the trade secrets and other confidential information of the FIRM.
>
> The EMPLOYEE agrees that he/she will not make any use of, take, download, publish or disclose, or authorize anyone to use, take, publish or disclose, any of the FIRM's trade secrets and other confidential information, for any reason, except to the extent authorized and required in the course of performing his/her duties on behalf of the FIRM. Upon request of the FIRM, the EMPLOYEE will promptly return and destroy all

expressions of trade secrets and confidential information in his/her possession and control. EMPLOYEE shall cooperate with the FIRM's efforts to verify such return or destruction.

As used herein, the term "trade secrets and other confidential information" shall include, without limitation: (a) client or prospective client lists and client or prospective client contact information (including but not limited to business cards, contact persons, and hiring managers): (b) client job openings and job orders and client pricing information; (c) actual or prospective applicant, employment candidate, employee or consultant lists; (d) actual or prospective applicant, employment candidate, employee or consultant qualifications, contact information, and resumes; (e) actual or prospective applicant, employment candidate, employee or consultant compensation and benefits; and (f) other client, applicant, employment candidate, employee or consultant data or information.

**7. Return of FIRM Property.** All information, data, lists, business forms, manuals, policies, training materials, communications and all other intellectual property compiled, maintained, received or used by the EMPLOYEE in the course of his/her employment with the FIRM is and shall remain at all times the exclusive property of the FIRM. Upon termination of the EMPLOYEE's employment for any reason, the EMPLOYEE shall immediately return to the FIRM any and all tangible and intangible property of the FIRM, in whatever form, in the EMPLOYEE's possession, custody or control, including but not limited to trade secrets and confidential information as defined in the preceding section.

**8. Non-Solicitation Covenants.** a) <u>Covenants relating to clients</u>: the EMPLOYEE agrees that upon termination of his/her employment for any reason, the EMPLOYEE will not, for a period of twelve (12) months from the date of termination, directly or indirectly solicit or accept business that is competitive with the FIRM from any client with whom the EMPLOYEE had contact while employed by the FIRM nor will the EMPLOYEE for such period directly or indirectly attempt to divert or assist others to divert any such clients' business from the FIRM to a competitor. . . .

**11. Enforcement.** The EMPLOYEE agrees that, in the event of a breach or threatened breach by the EMPLOYEE of any of the provisions or covenants contained in paragraphs 6, 7, 8, and 9 of this Agreement, the FIRM shall be entitled to the entry of a temporary, preliminary or permanent injunction (without any bond or other security being required) against the EMPLOYEE in any suit in equity brought for the purpose of enforcing such provisions or covenants. The consent to and the availability of an injunction as set forth above shall not preclude or prevent the FIRM

from seeking or recovering monetary damages under appropriate circumstances, or pursuing other appropriate remedies. The provisions of this Agreement shall not be construed as limiting any of the FIRM's rights under the Uniform Trade Secrets Act, as adopted, or under any other laws (whether statutory or common law) including, but not limited to, laws relating to confidential information, unfair competition, computer misconduct, and fiduciary duty.

14. As a Recruiter and Talent Representative with Kforce, Defendant's duties included Defendant identifying, interviewing, qualifying, and recruiting candidates for positions with Kforce's clients.

15. Throughout his employment, Defendant had access to, and accessed, confidential and trade secret information of Kforce, all of which is essential to running a staffing services operation, including, but not limited to (a) candidates' resumes and contact information; and (b) extensive confidential databases and lists of qualified technical candidates in various information technology specialties, including contact information and resumes, all gathered, compiled and maintained through great effort, at great expense, over a long period of time, all of which is designated confidential by Kforce.

16. Professional staffing firms, like Kforce, have relatively small investments in physical assets, and relatively large investments in developing, maintaining and managing intangible assets and goodwill; that is, information and relationships. As a result, Kforce protects information about its core employees, candidates, clients and placement opportunities. All of Kforce's confidential, proprietary and trade secret databases are password protected. Only employees with a "need to know" are given passwords. All employees with passwords are required to sign agreements with

confidentiality terms similar to those in the agreement executed by Defendant. In order to log on to Kforce's proprietary "Recruitmax" database of client and candidate information, employees must "click through" the following warning in bold red letters:

> WARNING: The information on the Recruitmax system is confidential and proprietary. Unauthorized use, duplication, transmittal or disclosure of this information is strictly prohibited. System activity is monitored and recorded.

17. Through its employees, Kforce has invested significant amounts of time and money establishing relationships with and compiling information about consultants and candidates who make up its workforce and/or who otherwise possess the required skills to service the needs of its clients. For example, Kforce contracts with, and pays substantial fees to, commercial "job boards" such as Monster.com in order to obtain access to their proprietary searchable databases of candidates and resumes. These databases are not available to the general public as only paying customers are permitted to use them. Kforce provides its employees, including Defendant, with passwords that give them access to these job boards and the information they contain.

18. Kforce has invested significant amounts of time and money identifying and developing relationships with, and compiling information about, clients and placement opportunities. Many placement opportunities simply never become public information; instead, clients share them with one or perhaps a handful of firms with which they have established relationships. Other times companies that have established relationships with clients, learn of opportunities before they become public and therefore have an opportunity to fill those positions before they become public.

19. Kforce employees, including Defendant, have been successful in identifying a pool of qualified candidates, because Kforce continually invests time, money and efforts in maintaining its pool of qualified candidates, so that there will be candidates available whenever a client needs to add staff. Other Kforce employees have been successful in developing relationships with clients and obtaining placement opportunities that are not generally known or available to many competitors, and Kforce's staffing specialists. Kforce also invests continually in maintaining its client base so that it can place candidates when opportunities become available.

20. On or about June 7, 2011, while still an active employee and while he still had access to Kforce's confidential information and trade secrets, Defendant misappropriated Kforce's highly confidential and proprietary data by electronically transferring it to his personal email address.

21. On June 7, 2011, in anticipation of his imminent departure to work for a Kforce competitor, Defendant forwarded the resumes and contact information for at least 34 Kforce candidates along with his personal notes regarding each candidate, to his personal e-mail address: bseesz@gmail.com. Many of these particular candidates possess high demand skills that make them highly marketable as consultants at billing rates typically in excess of $40 per hour for full time assignments that usually last for three months or longer. These candidates and the accompanying information represent the distilled work product of hundreds and perhaps thousands of hours of effort by Kforce personnel, and in the staffing industry a candidate list of this nature is extremely valuable.

22. The resumes and contact information that Defendant forwarded were maintained in Recruitmax, Kforce's proprietary and confidential sales data base described above. In order to access this information, Defendant agreed to the terms of use, which included the following statement: "All data and information maintained in this system is the property of Kforce Inc.," and was presented with the bold warning referred to above.

23. One day later, on June 8, 2011, Defendant resigned from his employment with Kforce and announced his decision to begin working for Kforce's competitor, Tech Pro, Inc.

24. Since that time, Kforce has discovered Defendant's above-alleged conduct and misappropriation.

25. Kforce continues to investigate the extent of Defendant's activities.

26. On information and belief, Defendant has utilized, and continues to utilize, Kforce's confidential, proprietary, and/or trade secret information in furtherance of his personal and/or professional benefit, in violation of his contractual, statutory and common law obligations.

27. On information and belief, Defendant has misappropriated Kforce's confidential, proprietary and trade secret information to unfairly compete with Kforce.

28. Defendant's actions have caused, and will continue to cause, Kforce to suffer irreparable harm and to compromise Kforce's business relations with its clients, job candidates, and employees.

## COUNT I

**(Fraud and Related Activity in Connection with Computers – 18 U.S.C. § 1030)**

29.     Kforce restates and re-alleges the allegations contained in paragraphs 1 through 28 above, as if those allegations were fully set forth in this paragraph.

30.     Kforce is a "person" for purposes of 18 U.S.C. § 1030, as Kforce is a corporation.

31.     The Kforce computer accessed by Defendant is a "protected computer" for purposes of 18 U.S.C. § 1030, as it was used in interstate commerce or communications.

32.     By engaging in the conduct described herein, Defendant intentionally accessed a protected computer without authorization, and as a result of such conduct, recklessly caused damage, in violation of 18 U.S.C. § 1030(a)(5)(A)(ii), (iii).

33.     By engaging in the conduct described herein in violation of 18 U.S.C. § 1030(a)(5)(A)(i)-(iii), Defendant caused loss to Kforce aggregating at least $5,000 in value.

34.     Kforce suffered damage and loss by reason of Defendant's violation of 18 U.S.C. § 1030.

35.     This action has been commenced within two years of the dates of the acts complained of and within two years of the date of the discovery of the damage.

## COUNT II

**(Breach of Contract – Confidential Information)**

36.     Kforce restates and re-alleges the allegations contained in paragraphs 1 through 35 above, as if those allegations were fully set forth in this paragraph.

37. Defendant's conduct and actions, as described above, constitute a breach of his Agreement with Kforce.

38. Defendant's breach of the obligations owed under his Agreement has caused damage to Kforce, which has suffered, and will continue to suffer, irreparable harm that justifies enjoining Defendant from his illegal and improper actions, along with all other remedies available to Kforce. Kforce has also suffered monetary damages that exceed $75,000, exclusive of interest and costs.

## COUNT III
### (Misappropriation of Trade Secrets)

39. Kforce restates and re-alleges the allegations contained in paragraphs 1 through 38 above, as if those allegations were fully set forth in this paragraph.

40. Defendant's misappropriation of Kforce's confidential information and trade secrets, as described above, are in violation of the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.01, *et seq*.

41. Defendant's misappropriation of Kforce's confidential information and trade secrets has caused damage to Kforce, which has suffered, and will continue to suffer, irreparable harm that justifies enjoining Defendant from further misappropriation, along with all other remedies available to Kforce.

## COUNT IV
### (Constructive Trust)

42. Kforce restates and re-alleges the allegations contained in paragraphs 1 through 41 above, as if those allegations were fully set forth in this paragraph.

43. Defendant has unlawfully obtained possession of Kforce's confidential information and trade secrets.

44. Kforce is entitled to have a constructive trust imposed upon any of its confidential information and trade secrets that are currently in the possession of Defendant; is further entitled to an order of the Court prohibiting Defendant from in any way using, disclosing or otherwise misappropriating any of Kforce's confidential information or trade secrets; and finally is entitled to an order of the Court requiring Defendant to return all of Kforce's confidential information and trade secrets.

## COUNT V

### (Breach of Duty of Loyalty)

45. Kforce restates and re-alleges the allegations contained in paragraphs 1 through 44 above, as if those allegations were fully set forth in this paragraph.

46. Defendant's conduct and actions, as described above, constitute breaches of the duty of loyalty in violation of the common law of the State of Minnesota.

47. Defendant's breach of the duty of loyalty has damaged Kforce, which has suffered, and will continue to suffer, irreparable harm that justifies enjoining Defendant from his illegal and improper actions, along with all other remedies available to Kforce. Kforce has suffered loss and damages in an amount to be determined but which is expected to exceed $75,000, exclusive of costs and interest.

## COUNT VI

### (Conversion)

48. Kforce restates and re-alleges the allegations contained in paragraphs 1 through 47 above, as if those allegations were fully set forth in this paragraph.

49. Defendant has retained Kforce's property, despite Kforce's request and demand for its return.

50. Defendant has intentionally converted the property of Kforce by refusing to return Kforce's property to Kforce.

51. Defendant is not entitled to retain Kforce's property.

52. By Defendant's refusal to return Kforce's property to Kforce, Defendant has wrongfully deprived Kforce of its property.

53. As a direct and proximate result of Defendant's wrongful conversion, Kforce has suffered loss and damages that are expected to exceed $75,000, exclusive of interests and costs.

## COUNT VII

### (Claim For Injunctive Relief)

54. Kforce restates and re-alleges the allegations contained in paragraphs 1 through 53 above, as if those allegations were fully set forth in this paragraph.

55. Defendant's conduct and actions, as described above, constitute breach of Minnesota law.

56. By virtue of Defendant's conduct and actions, Kforce has demonstrated that a balancing of the equities favors issuance of a permanent injunction against the Defendant.

57. Unless Defendant is enjoined from the foregoing conduct, Kforce will suffer irreparable harm in the form of:

   a. Disclosure of Kforce's trade secrets and/or confidential information;

   b. Loss of goodwill through the loss of customers and candidates;

   c. Present economic loss, which is unascertainable at this time, and future economic loss, which is incalculable.

58. Kforce has no adequate remedy at law.

**WHEREFORE**, Kforce prays the Court for judgment against Defendant, including the following legal and equitable relief:

1. An order for permanent injunctive relief as follows:

   Enjoining Defendant from taking any action that has the purpose or effect of disclosing, utilizing, disseminating or in any manner dealing with Kforce's confidential information and trade secrets or any other property belonging to Kforce.

   Requiring Defendant to return to Kforce any and all of its confidential information, trade secrets and other company property.

   Requiring Defendant to maintain on any computer or other electronic storage device to which he has access all emails, electronic files or other information concerning Kforce until such time as any such computers or devices may be reviewed and examined.

   Enjoining Defendant from further breach of his Agreement and/or violation of the Minnesota Uniform Trade Secrets Act.

2. Monetary damages in an amount to be determined at trial.

3. Punitive damages in an amount to be determined at trial.

4. An award of compensatory damages in an amount to be determined at trial.

5. An order allowing Kforce to recover its costs, disbursements, and reasonable attorney fees allowed by law.

6. Such other and further relief as the Court deems just and equitable.

Date: June 28, 2011.

Jacqueline E. Kalk (#0388459)
jkalk@littler.com
John H. Lassetter (#0389009)
jlassetter@littler.com
**LITTLER MENDELSON, P.C.**
1300 IDS Center
80 South 8th Street
Minneapolis, MN 55402.2136
Telephone: 612.630.1000
Facsimile: 612.630.9626

**ATTORNEYS FOR PLAINTIFF**

Firmwide:102275518.1 028977.1157